UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FELIPE SEGURA SERRANO,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

CASE NO. 2:26-cv-01268-LK

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner Felipe Segura Serrano's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons discussed below, the Court grants the petition in part and denies it in part.[1]

## I.      BACKGROUND

Segura Serrano is a native and citizen of Mexico. Dkt. No. 7-1 at 2. In both 1999 and 2001, he was voluntarily removed to Mexico. Dkt. No. 7-3 at 5; Dkt. No. 2-2 at 7. At some point thereafter, he re-entered the country without detection and has resided here for more than 20 years. Dkt. No. 1 at 2. He has four children, three of whom are American citizens. Dkt. No. 2 at 2; Dkt. No. 2-1 at 7–15; Dkt. No. 2-2 at 6. He owns a trailer home in Tukwila, Washington, Dkt. No. 2-1

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

at 37, has worked installing stucco for the same contracting firm since at least 2016, *id.* at 27–34, and has no criminal record, Dkt. No. 7-3 at 4.

On January 1, 2026, agents from Immigration and Customs Enforcement ("ICE") and other law enforcement officers approached Segura Serrano's pickup truck as part of a "targeted enforcement operation[.]" *Id.* at 3. ICE records state that he rolled his tinted window down approximately two inches and declined to provide the agents with identification. *Id.* Agents asked him again to roll his window down further or they would have to break it, and he "continued to refuse." *Id.*[2] Based on this alleged "refusal to cooperate," the agents then "utilized a window break tool to break the window" of his vehicle, removed him from his vehicle, and arrested him. *Id.* at 3–4. ICE transported him to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. Dkt. No. 8 at 2.

On January 28, 2026, Segura Serrano appeared before an Immigration Judge ("IJ") for a bond hearing. Dkt. No. 2-3; *see also* Dkt. No. 2-1 (Segura Serrano's bond submission). The same day, the IJ issued an order denying his request for bond. Dkt. No. 7-4. The IJ determined that she did not have jurisdiction to provide bond because Segura Serrano's detention was mandatory under 8 U.S.C. § 1225(b), and even "if the Court did have jurisdiction, it would deny bond" based on "Flight Risk[.]" *Id.* at 2–3. Over a month later, the same IJ issued a "Bond Memorandum" explaining her decision to deny bond in more detail. Dkt. No. 7-6. She found that Segura Serrano had "failed to establish he is not a danger or a flight risk" due to his "immigration history, lack of potential forms of relief, and refusal to comply with immigration officers[.]" *Id.* at 3.[3] Segura

---

[2] The record indicates that Segura Serrano requires Spanish translation, Dkt. No. 7-1 at 3, but it does not indicate whether the agents' commands were given in Spanish.

[3] The IJ's initial order did not indicate that Segura Serrano was a danger to the community. Dkt. No. 7-4 at 2. In their briefing, Respondents "defer to the IJ's contemporaneous bond order," which found only that Segura Serrano was a flight risk. Dkt. No. 6 at 5 n.3.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

Serrano appealed the bond denial decision to the Board of Immigration Appeals ("BIA") around February 27, 2026. Dkt. No. 8 at 3. The appeal remains pending. *Id.*

On April 22, 2026, a different IJ issued an order denying Segura Serrano's application for cancellation of removal and granting his request for voluntary departure; the IJ ordered him to depart by May 21, 2026. Dkt. No. 7-5. *Id.* at 3. Segura Serrano appealed the order to the BIA on April 29, 2026, Dkt. No. 10 at 2; the appeal presumably remains pending.

On April 13, 2026, Segura Serrano filed a petition for writ of habeas corpus. Dkt. No. 1. On April 28, Respondents[4] filed a return, Dkt. No. 6, and on April 30, Segura Serrano filed a traverse, Dkt. No. 9.

## II.    DISCUSSION

In his habeas petition, Segura Serrano alleges that the IJ abused her discretion when she "fail[ed] to address the required factors for the flight risk and danger determinations," thereby violating 8 U.S.C. § 1226. Dkt. No. 1 at 19. He also alleges that Respondents are violating the Due Process Clause of the Fifth Amendment because his "detention does not bear a 'reasonable relation' to either preventing flight risk or preventing danger to the community." *Id.* at 20. Finally, Segura Serrano alleges that he is "a member of the Bond Denial Class" in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), and therefore the declaratory judgment issued in that case compels the conclusion that he is detained under 8 U.S.C. § 1226(a), not 1225(b). Dkt. No. 1 at 9, 21–22. He asks that the Court issue an order requiring Respondents to immediately release him and return his personal property, and requiring the IJ who issued the bond denial

---

[4] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

decision "to read the Court's decision, and affirm in writing that she has reviewed it[.]" *Id.* at 21–22. He also requests fees and costs. *Id.* at 22.

## A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

### B.      Segura Serrano Is Detained Under 8 U.S.C. § 1226(a)

As noted above, Segura Serrano argues that he is a member of the "the Bond Denial Class in *Rodriguez Vazquez*" and, by virtue of the declaratory judgment issued in that case, he "must be considered detained" under 8 U.S.C. § 1226(a). Dkt. No. 1 at 9. Respondents "do not oppose Petitioner being considered a member of the *Rodriguez Vazquez Bond* Denial class for purposes of this litigation," and argue that "even if the Court were to find Petitioner subject to the discretionary detention regime of Section 1226(a) as directed in *Rodriguez Vazquez*, he would remain lawfully in detention under the IJ's separate findings." Dkt. No. 6 at 2. For the reasons laid out in *Rodriguez Vasquez*, 802 F. Supp. 3d at 1322–36, the Court agrees with Segura Serrano that the statute governing his detention is Section 1226(a).

### C.      Prudential Exhaustion Is Not Required

Respondents argue that Segura Serrano has failed to exhaust his administrative remedies because his appeal of the bond denial decision to the BIA remains pending, so the Court should deny his petition on prudential exhaustion grounds. Dkt. No. 6 at 6–9. Segura Serrano contends that the Court should "waive any exhaustion requirement" because the factors determining whether exhaustion is warranted weigh in his favor, and even if they didn't, his situation fits into one of several exceptions to the general rule requiring exhaustion. Dkt. No. 1 at 14–19; *see also* Dkt. No. 9 at 2–6.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

Here, even assuming without deciding that the *Puga* factors weigh in favor of exhaustion, pursuit of administrative remedies would involve an unreasonable timeframe and would likely prove to be futile. As the Department of Justice recently stated, after the Attorney General reduced the BIA's size by nearly one half in early 2025, there has been an "unprecedented B[IA] caseload." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). Indeed, "between fiscal year 2015 and the end of fiscal year 2025, the B[IA]'s pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals," leaving the BIA "at a point where, even were it to have additional resources and better management, . . . it would not be able to keep up with incoming filings while tackling the backlog in any meaningful way." *Id.* (citing Executive Office of Immigration Review ("EOIR"), Adjudication Statistics: All Appeals Filed, Completed, and Pending (Nov. 18, 2025), https://www.justice.gov/eoir/media/1344986/dl?inline [https://perma.cc/88C5-MU4N]). Thus, "the B[IA] largely functions now as simply a vessel for further delay of the eventual resolution of [a noncitizen's] case." *Id.* at 5271. As Segura Serrano points out, in 2024, EOIR data showed that

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

"it takes over six months to issue decisions in BIA custody appeals," Dkt. No. 1 at 16 (citing *Rodriguez Vazquez*, 802 F. Supp. 3d at 1307), and the data in 2025 indicates that the delay has exponentially worsened.

Furthermore, it is very likely that the BIA will have no occasion to review the merits of the IJ's bond determination. The principal basis upon which the IJ denied bond is the BIA's binding decision in *Matter of Yajure Hurtado*, which adopted the government's interpretation of Section 1225(b)(2)(A) to deny bond hearings to noncitizens like Segura Serrano. 29 I & N Dec. 216 (BIA 2025); *see also* Dkt. No. 7-6 at 2. It would be quite surprising if, despite its large backlog, the BIA decided to review the IJ's decision on the merits rather than simply adhering to *Yajure Hurtado* by affirming based on lack of jurisdiction. *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") (citation modified).

In sum, Segura Serrano faces an unduly prolonged delay at the BIA for a decision that likely will not even address the issues before this Court. Such delay on the off chance that the BIA might address the merits is unjustifiable; procedural mechanisms for challenging illegality of detention are "reduced to a sham if . . . courts do not act within a reasonable time." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Jones v. Shell,* 572 F.2d 1278, 1280 (8th Cir. 1978)); *see also Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error."); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) (finding administrative exhaustion unwarranted where "the defect alleged by Petitioner [wa]s constitutional in nature, and it [wa]s unlikely that appeal to the BIA w[ould] permit the agency to correct a factual or evidentiary oversight by the IJ." (citation modified)).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

Furthermore, it is clear that Segura Serrano's challenge to the bond determination is not a factual challenge "cloaked in constitutional garb," as Respondents suggest. Dkt. No. 6 at 11 (citation modified). The threadbare rationale of the IJ (as discussed below) suggests her decision was results-oriented rather than based on the applicable legal standards. Given Segura Serrano's colorable due process claim, it is not difficult to conclude that he will suffer irreparable injury if his arguably unconstitutional detention continues while he awaits a BIA decision on the merits that may never come. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Segura Serrano also "has dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention." *Soriano*, 2026 WL 969764, at *4; *see also* Dkt. No. 2-1 at 24–25 (letters from teacher of Segura Serrano's daughter detailing emotional distress due to their father's detention). "[S]eparated families . . . are substantial injuries and even irreparable harms." *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017).

Under these circumstances, the Court exercises its discretion to find that prudential exhaustion is not required. The Court now turns to whether the IJ's decision was an abuse of discretion.

**D.      The IJ Abused Her Discretion by Denying Bond**

Respondents argue that the Court lacks jurisdiction to review Segura Serrano's bond decision because it would "improperly substitute [the Court's] judgment for the IJ's," and Segura Serrano has "failed to demonstrate that the IJ's decision constitutes an abuse of discretion or violates his right to due process." Dkt. No. 6 at 2–3. Segura Serrano contends that the IJ's bond denial constituted an abuse of discretion because the "factors the IJ is required to assess compel the conclusion that [he] is neither a flight risk nor a danger to the community." Dkt. No. 1 at 10.

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). In other words, Section 1226(e) "precludes federal courts from reviewing 'underlying factual determinations'" such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Martinez*, 124 F.4th at 785 (citation modified).

### 1. The IJ's Decision

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance

in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the above standard is a reviewable mixed question of fact and law, even though what constitutes a risk of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano*, 2026 WL 969764, at *3 (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M.*, 2026 WL 262583, at *1 (same); *Vasquez Lopez v. Hernandez*, No. C26-0775-TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (same).

Accordingly, Segura Serrano's allegation in his habeas petition—that the IJ abused her discretion when she determined that he was a flight risk and a danger to the community despite facts that strongly suggested otherwise—presents a mixed question of fact and law that the Court has jurisdiction to review.

The IJ's flight risk and dangerousness analysis states, in full:

The respondent is a 55-year-old male a native and citizen of Mexico. He requested release on bond and submitted evidence in support of hearing. The respondent has four United States citizen children ages 21, 18, 12, 10. The 12-year-old has hearing loss, while the ten-year-old has experienced emotional hardship since respondent's detention. The respondent filed employment and tax records. The respondent has a fixed address at the mobile trailer he owns. He argues he is not a danger to the community and or a flight risk. He requests a bond in the amount of $7,500.

Noticeably the respondent has not filed for any immigration status in the United States. He claims he will file for asylum and withholding of removal and cancellation of removal as a nonpermanent resident. There is no visa petition filed for him by his adult child. The respondent has an immigration history. He has multiple entries into the United States. He was afforded two separate voluntary returns. However, he reentered without permission. The respondent failed to comply with the instructions by the officers during his apprehension. He rolled his

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

window down two inches but refused to lower it further. After refusal to comply with the officers they had to break the car window. When taken into custody and interviewed he told the officers he did not fear returning to his country.

Given the immigration history, lack of potential forms of relief, and refusal to comply with immigration officers the court finds that the respondent failed to establish he is not a danger or a flight risk.

Dkt. No. 7-6 at 3 (citations omitted).

The IJ did not describe the burden of proof in her decision, but she did apply the burden to Segura Serrano. *See* Dkt. No. 7-6 at 2 ("[A noncitizen] in a custody determination under . . . § 1226(a) . . . must establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight."); *id.* at 3 ("[T]he court finds that the respondent failed to establish he is not a danger or a flight risk."). Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The implementing regulations likewise do not identify who shoulders what burden, simply stating that both parties may present evidence. *See* 8 C.F.R. § 1003.19(d) (2025) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information . . . that is presented to him or her by the [noncitizen] or the Service."). The Supreme Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

The federal appellate courts that have addressed this question are split. The First and Second Circuits have held that the burden of proof for continued immigration detention must be placed on the government—but those Circuits do not agree on the standard of proof. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (applying the Supreme Court's *Mathews v. Eldridge* test before holding that with respect to a petitioner who had been in custody

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11

for ten months, the government bore the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020) (applying the *Mathews* test before holding that, after a showing of prolonged detention, the government bore the burden of proving danger and flight risk by clear and convincing evidence).

The Third and Fourth Circuits have assigned the detainee the burden of proof on the questions of flight risk and danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (holding that requiring a Section 1226(a) detainee to show that he or she is not a danger or the community or a flight risk by a preponderance of the evidence does not violate the Due Process Clause); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277, 279 (3d Cir. 2018) (no due process violation with respect to burden remaining with detainee to show that he is not a danger to the community or a flight risk).

The Ninth Circuit has declined to require the government to meet a clear and convincing burden of proof to justify continued detention of a noncitizen in the specific context of a second bond hearing under Section 1226(a). *Compare Singh*, 638 F.3d at 1203 (holding that "[g]iven the substantial liberty interest at stake" for noncitizens subject to prolonged detention under Section 1226(a), "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond"); *Martinez*, 124 F.4th at 786 (in a case involving a petitioner detained under Section 1226(c), describing *Singh* as "offer[ing] the high-water mark of procedural protections required by due process"); *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (noting that "after the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and

concluding that the Due Process Clause did not entitle the petitioner "to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence").

2.      Abuse of Discretion

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence, the Court finds that the IJ abused her discretion in this case. *See Martinez*, 124 F.4th at 779.

First, the IJ linked Segura Serrano's two voluntary removals from 1999 and 2001 to flight risk, but she "failed to identify why conduct that occurred approximately 25 years ago (or more) suggests [that he] would be motivated to flee and otherwise not appear at future immigration proceedings." *Soriano*, 2026 WL 969764, at *5. Segura Serrano has lived in the country for 20 years, has owned a home for nine years, has worked the same job for many years, and has four children, including two minor dependents who are U.S. citizens. *See* Dkt. No. 2 at 2; Dkt. No. 2-1 at 7–15, 27–37; Dkt. No. 2-2 at 6. "The IJ provides no explanation why an unauthorized reentry into the United States 25 years ago would motivate [Segura Serrano] to uproot his family from his community (or abandon his family) to avoid immigration officials and flee." *Soriano*, 2026 WL 969764, at *5. "Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale." *Id.* Such rationale also suggests that *any* individual who entered the country illegally could be considered a flight risk and denied bond on that ground—but this would effectively transform discretionary detention into de facto mandatory detention. "[A]n individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." *Rosales v. Simon*, No. 1:26-CV-86 (LMB/WEF), 2026 WL 688858, at *5 (E.D. Va. Mar. 11, 2026) (citation modified).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

Second, the IJ provided no rational connection between Segura Serrano's lack of potential forms of relief from removal and his supposed flight risk. IJs may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk because "[a] [noncitizen] with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *see also Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020), *abrogated on other grounds*, *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021). "But the fact of a removal order"—or the lack of potential forms of relief for a potential future removal order—"is not sufficient by itself to deny bond" or establish flight risk. *Tavurov v. Noem*, No. 2:26-CV-00668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026); *see also Singh*, 638 F.3d at 1205 (a final removal order "alone does not constitute clear and convincing evidence that [a noncitizen] presented a flight risk justifying denial of bond"); *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) (noting that the fact that a noncitizen has unresolved claims for immigration relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that basis alone"). Here, despite noting that Segura Serrano intended to "file for asylum and withholding of removal and cancellation of removal as a nonpermanent resident," Dkt. No. 7-6 at 3, the IJ concluded that he "lack[ed] *potential* forms of relief." *Id.* (emphasis added). This is not only contradicted by her earlier statement that Segura Serrano was planning to file several applications for relief, but also provides no analysis of "the likelihood that relief from removal will be granted." *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805. Further, the "IJ did not explain how the relative strengths or weaknesses of [Segura Serrano's] claims for relief outweighed the specific circumstances" that weighed against finding him to be a flight risk (such as his children, home, and job). *Soriano*, 2026 WL 969764, at *5.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

Third, the IJ provided no explanation tying Segura Serrano's alleged "refusal to comply with immigration officers" to his purported flight risk. Dkt. No. 7-6 at 3. There are many potential explanations for Segura Serrano's decision to lower his car window partially and his declination to provide identification, including that he was attempting to invoke his right to remain silent or was afraid of unjustified force from the many law enforcement officers who suddenly surrounded his vehicle. *See* Dkt. No. 7-3 at 3–4. Indeed, by the time of his arrest, there had been widespread news coverage of excessive force by ICE in encounters with immigrants; whether true or not, this could certainly have resulted in reasonable apprehension on Segura Serrano's part. *See M-J-M-A-v. Hermosillo*, No. 6:25-CV-02011-MTK, 2026 WL 562063, at *23 (D. Or. Feb. 27, 2026) ("The evidence . . . establishes that ICE's arrest tactics are violent and brutal[.]"); *Minnesota by & through Ellison v. Noem*, 818 F. Supp. 3d 1030, 1048 (D. Minn. 2026) ("[T]here is evidence that ICE and CBP agents have engaged in racial profiling, excessive use of force, and other harmful actions."); Meg Anderson, *Tackles, projectiles and gunfire: Many fear ICE tactics are growing more violent*, National Public Radio, Oct. 13, 2025, *available at* https://www.npr.org/2025/10/13/nx-s1-5566785/ice-dhs-immigration-tactics-more-violent. The IJ made no attempt to explore the potential reasons for Segura Serrano's conduct or to explain how his conduct supported an increased risk of flight, let alone by a preponderance of evidence.

Fourth, the IJ listed several factors that suggest that Segura Serrano is not a flight risk (i.e., that he has four children in the United States, including a 12-year old with hearing loss and a 10-year-old who had experienced emotional hardship due to Segura Serrano's detention; that he filed evidence of employment and tax records; and that he has a "fixed address at the mobile trailer he owns") but failed to provide any explanation as to why she discounted these factors. "The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the

applicable factors." *Vasquez Lopez*, 2026 WL 984151, at *3. "The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion." *Id.*

Finally, the IJ found in her March 4, 2026 written opinion that Segura Serrano was a danger to the community even though her contemporaneous bond decision (dated January 28, 2026) concluded only that he was a flight risk. *Compare* Dkt. No. 7-4 *with* Dkt. No. 7-6. Absent an inflexible (and legally impermissible) results-driven approach, it is entirely unclear why the IJ concocted a dangerousness finding after the fact. In the very least, this post hoc finding is a "red flag" that "something is amiss" with the IJ's analysis. *Martinez*, 124 F.4th at 785.

In sum, the IJ failed to provide rationale for her findings of flight risk and dangerousness and failed to engage whatsoever with the factors weighing against such findings. And she concocted a dangerousness finding out of thin air after the fact. It is clear to this Court that the IJ (1) did not "correctly appl[y] the [legal] standard to a given set of facts," *see Martinez*, 124 F.4th at 783, and (2) applied an impossibly high burden of proof to Segura Serrano. By failing to accord Segura Serrano the process due to him, the IJ abused her discretion and violated his Fifth Amendment rights. *See Minango v. Bondi*, No. 2:26-CV-00235-ART-BNW, 2026 WL 1257028, at *4 (D. Nev. May 6, 2026) (finding a due process violation where the IJ "failed to apply the correct legal standard as required by due process"); *Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10 (C.D. Cal. Mar. 5, 2026) ("Given Miri's inadequate bond hearing, Miri's continued detention fails to comply with his constitutional due process rights."); *W.T.M.*, 2026 WL 262583, at *4 (bond denial was

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 16

"constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk").

**E.       Remedy**

Because Segura Serrano's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for his continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren,* 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued detention); *Miri*, 2026 WL 622302, at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond).

Segura Serrano also requests that the Court order that the IJ who issued the bond denial decision "be required to read the Court's decision, and affirm in writing that she has reviewed it[.]" Dkt. No. 1 at 21–22. Segura Serrano does not provide authority to justify this request, and the Court denies it.[5] However, given that the BIA's review of the IJ's decision is unlikely to allow the agency to correct its own mistakes, *see Puga*, 488 F.3d at 815, Respondents would be remiss not to provide the IJ a copy of this Order for guidance.

---

[5] For the first time in his reply brief, Segura Serrano requests that the Court "specify that any conditions of release shall not include electronic monitoring, such as a GPS or ankle bracelet." Dkt. No. 9 at 12. The Court does not entertain these belated requests. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 17

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the petition for a writ of habeas corpus, Dkt. No. 1, and orders as follows:

(1)    Respondents shall immediately release Segura Serrano from custody with reasonable conditions of supervision and shall return to Segura Serrano any personal property not required to be retained by Respondents by law;

(2)    The parties shall file a Joint Status Report by May 27, 2026, confirming that Segura Serrano has been released;

(3)    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja,* 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template

//

//

//

//

//

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 18

was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 26th day of May, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 19